757 So.2d 843 (2000)
Virginia EWING, et al.
v.
STATE of Louisiana, Through DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 99-1556.
Court of Appeal of Louisiana, Third Circuit.
March 15, 2000.
Mark Delphin, Delphin Law Firm, P.L.C., Lake Charles, Louisiana, Eulis Simien, Jimmy Simien, Simien & Simien, L.L.C., Baton Rouge, Louisiana, Counsel for Plaintiff-Appellant.
Frank Walker, Plauché, Smith & Nieset, Lake Charles, Louisiana, Counsel for Defendant-Gravity Drainage District No. 4.
*844 Chris John, Asst. City Attorney, Lake Charles, Louisiana, Counsel for Defendant-City of Lake Charles-Appellee.
Steven Beverung, Book & Beverung, Lake Charles, Louisiana, Counsel for Defendant-Sheriff of Calcasieu Parish-Appellee.
Fred Cappel, Raggio, Cappel, Chozen & Berniard, Lake Charles, Louisiana, Counsel for Defendant-Calcasieu Parish Police Jury-Appellee.
Joe Brame, Brame & McCain, Lake Charles, Louisiana, Victor Stilwill, Le Kohler, Deutsch, Kerrigan & Stiles, New Orleans, Louisiana, Counsel for Defendant-D.W. Jessen, Sr. and D.W. Jessen & Assoc.-Appellee.
Robert Ellender, Voohries & Labbe, Lafayette, Louisiana, Counsel for Defendant-D.W. Jessen, Sr.
(Court composed of Judge JIMMIE C. PETERS, Judge GLENN B. GREMILLION, and Judge ELIZABETH A. PICKETT).
GREMILLION, Judge.
The plaintiff, Virginia Ewing, individually and on behalf of her minor children, Aaron and Latasha Marie Myles, appeals the trial court's granting of summary judgment in favor of the defendants, the Calcasieu Parish Police Jury, D.W. Jessen, Sr., and D.W. Jessen & Associates. For the following reasons, we affirm.

FACTS
On June 24, 1996, Aaron, who was eleven years old, slipped and fell into the drainage ditch known as the Woodring Street lateral, which is located west of Goos Boulevard and east of the Calcasieu River in Lake Charles. As a result of this accident, Aaron nearly drowned, suffering massive brain damage. He remains in a comatose state to this day.
Ewing filed suit initially against the State, Through the Department of Transportation and Development, the Calcasieu Parish Gravity Drainage District No. 4 (Drainage District), the Calcasieu Parish Police Jury (Police Jury), the City of Lake Charles (City), and the Honorable Wayne McElveen, Sheriff of Calcasieu Parish. D.W. Jessen, Sr. and D.W. Jessen & Associates Civil Engineers[1] (Jessen) were added as defendants in Ewings' First Amending and Supplemental Petition.
Following numerous procedural maneuvers, the trial court granted summary judgment in favor of the Police Jury, finding that there was no genuine issue of material fact on the issue of the Police Jury's responsibility for the Woodring Street lateral. The trial court further granted summary judgment in favor of Jessen, finding that any claims against it were perempted by the ten year peremptive period contained in La.R.S. 9:2772. This appeal followed.

ISSUES
Although Ewing raises six assignments of error on appeal, her argument boils down to whether the trial court erred in granting summary judgment in favor of the Police Jury and Jessen.

SUMMARY JUDGMENT
Pursuant to La.Code Civ.P. art. 966, summary judgment is favored. If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal an absence of any genuine issues of material fact, judgment shall be rendered in favor of the mover if it is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). The burden of proving that summary judgment is appropriate remains with the mover. "In doing so, the moving party's supporting documentation must be sufficient *845 to establish that no genuine issue of material fact remains at issue." Mouton v. Sears Roebuck, 99-669, p. 2 (La.App. 3 Cir. 11/3/99); 748 So.2d 61, 65, quoting Daigrepont v. AAA Transp. Co., 98-1329, p. 4 (La.App. 3 Cir. 3/3/99); 736 So.2d 923, 926. "[O]nce the mover has made a prima facie case that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain." Hayes v. Autin, 96-287, p. 6 (La.App. 3 Cir. 12/26/96); 685 So.2d 691, 694. Unless the non-moving party substantiates that she will be able to satisfy her evidentiary burden of proof at trial through the presentation of factual evidence, judgment will be granted in favor of the mover. La. Code Civ.P. art. 966(B)(2).
Summary judgments are reviewed de novo under the same criteria that govern the trial court's consideration of whether the grant of summary judgment is proper. Schroeder v. Board of Supervisors of Louisiana State Univ., 591 So.2d 342 (La.1991).

POLICE JURY
The Police Jury introduced several depositions and an affidavit into evidence in support of its motion for summary judgment. In his affidavit, Albert Prater, the Public Works Administrative Assistant for Calcasieu Parish, stated that the Police Jury is a political subdivision of the state, separate and apart from the Drainage District. He further stated that the Woodring Street lateral is located in north Lake Charles and that it was not "designed, constructed, installed or maintained at any time subsequent to construction by the Calcasieu Parish Police Jury, or any of its departments or agencies."
In his deposition, Prater stated that the Police Jury Public Works Department maintains public roads within the parish, but does not maintain any off-road drainage, any roads or drainage within the City of Lake Charles or any other city within the parish, or any state highway. Prater stated that the Woodring Street lateral is not located within the jurisdiction of the Police Jury, but rather is within the jurisdiction of the City and Drainage District.
Mike Wittler, superintendent of right-of-way work for the Drainage District, stated that responsibility for maintaining all drainage laterals belongs to the Drainage District. Although the Drainage District does not own the property along the laterals, it performs maintenance work on the laterals, including spraying the banks of the laterals three times per year as part of a vegetation management program and removing any obstructions to the flow of the laterals. Wittier testified that the Drainage District dredged the Woodring Street lateral for 100 feet immediately west of Goos Boulevard in May 1994 and built a pumping station half-way between the accident site and the Calcasieu River during two phases in 1992-93 and 1994-95. Wittler further stated that the Drainage District received a request from the City and the Police Jury on August 10, 1995, to investigate the possibility of fencing the laterals within the Drainage District following another incident where a child nearly drowned in a drainage lateral. He stated that the Drainage District eventually decided that it would not be reasonably feasible to fence all of the laterals within its district.
D.W. Jessen, Jr. (Jessen Jr.), a civil engineer with the engineering firm of D.W. Jessen and Associates, was deposed on behalf of the City. He stated that the purpose of the Woodring Street lateral is to provide drainage for the area of Lake Charles where it is located. It was Jessen Jr.'s opinion that the open channel of the Woodring Street lateral, located downstream of Goos Boulevard, was maintained by the Drainage District and that it performed inspections of the laterals in that area. He stated that the maintenance of the major drainage laterals is under the jurisdiction of the Drainage Board, and that the City assists in maintaining the infrastructure along the street roadways, *846 the culverts, drainage boxes, and catch basins.
Jessen Jr. was unaware of any involvement by the Police Jury in the construction, modification, operation, or maintenance of the Woodring Street lateral. The only knowledge he had of any involvement by the Police Jury was the request of a police juror, representing the area where the lateral is located, for cost estimates. Jessen Jr. testified that the Drainage District is an arm of the Police Jury, and the Police Jury appoints the board members of the Drainage District and provides some funding to its board. He stated that inquiries pertaining to the Woodring Street lateral could be raised by City Council Members, Police Jurors, or Drainage District Board Members.
Based on this evidence, we find that there is an absence of factual support evidencing that the Police Jury was responsible for the Woodring Street lateral. Since the Police Jury has made a prima facie showing that no genuine issue of material facts exist with regard to its responsibility, the burden shifts to Ewing to prove otherwise.
Ewing argues that the trial court erred in granting summary judgment in favor of the Police Jury since a genuine issue of material fact was raised by the Drainage District, in an opposition to the Police Jury's motion, when it alleged that responsibility for the Woodring Street lateral belonged jointly with it, the City, and the Police Jury. She further argues that a genuine issue of material fact is raised by a subsequent joint services agreement between the Drainage District, the City, and the Police Jury. On October 7, 1997, an Intergovernmental Services Agreement was entered into between the three political subdivisions, whereby they jointly agreed to expend $90,000 to cover the Woodring Street lateral immediately west of Goos Boulevard.
In support of her proposition that the Police Jury was jointly responsible for the Woodring Street lateral, Ewing presented evidence that the Police Jury, along with the City, assumed duties to remedy erosion in the large drainage laterals. The evidence consists of a June 19, 1996 work record, which reported that two property owners complained of erosion near the rear of their houses and requested the placement of "rip rap" on the banks of the "Mo/Pac" lateral. The work record stated that the "parish will cut tree limbs out of way."
After reviewing the voluminous exhibits introduced into the record by Ewing, we find that the grant of summary judgment in favor of the Police Jury was correct. Rather than raising genuine issues of material facts, the evidence militates towards a finding that the Police Jury had no responsibility for the Woodring Street lateral.
In a later deposition, Prater testified that the Police Jury only handled drainage along its roads, and that any off-road drainage is the responsibility of the Drainage District. He further stated that the Police Jury does no work within the city limits of any city i n the parish in the absence of a joint service agreement approved by the Police Jury. He testified that any work within the city limits is the responsibility of either the City, the Drainage District, or both. Prater further stated that the Police Jury has no control over the Drainage District board members' actions or budget, nor does it have the authority to remove a member from the board after appointing them. He described the Drainage District as a governmental entity separate and apart from the Police Jury, although he stated that the Police Jury does have a grant program, which is a trust fund set up to provide funding to the various drainage districts or cities within the parish.
Claude Smart, the parish engineer for the Police Jury, testified that the Police Jury completely divested itself of responsibility for off-road drainage in 1983, which responsibility was passed on to eight *847 drainage districts. He stated that the Police Jury provides no funding for drainage except in extraordinary circumstances.
We agree with the Police Jury that an allegation of joint responsibility, apparently raised in the Drainage District's opposition to the motion for summary judgment, does not constitute evidence sufficient to raise a genuine issue of material fact. Further, the subsequent action of the Police Jury in entering into the Intergovernmental Services Agreement does not raise a genuine issue of material fact as to the Police Jury's responsibility for the Woodring Street lateral at the time of the accident. Smart testified that such agreements were entered into when a project was beneficial to the parish and involved matters of public health and safety. Aside from this, the evidence overwhelmingly points to the Police Jury having no responsibility for the Woodring Street lateral. Since the Police Jury is not responsible for maintaining the drainage lateral, it is not liable for Aaron's injuries. Deville v. Calcasieu Parish Gravity Drainage Dist. No. 5, 422 So.2d 631 (La.App. 3 Cir.1982). Accordingly, we find that the trial court's grant of summary judgment in favor of the Police Jury was proper.

JESSEN
Jessen initially filed a motion for summary judgment on March 2, 1998, alleging that any claims against it were perempted by La.R.S. 9:2772. In support of its motion, Jessen introduced the affidavit of D.W. Jessen, Sr. (Jessen Sr.) and exhibits pertaining to prior work it performed on the Woodring Street lateral. In his affidavit, Jessen Sr. stated that he has practiced civil engineering as D.W. Jessen & Associates since 1949 and had never been employed by either the City or the Drainage District. Any services performed for either entity were performed as D.W. Jessen & Associates, as a professional consultant or independent contractor.
Upon review of his records, he determined that Jessen was involved in only two projects involving the Woodring Street lateral. The first, Project No. 1960-03, involved storm drainage improvements in Goosport on Goos Boulevard. Jessen prepared the plans and specifications for the project and inspected the construction work for the Drainage District. A certified copy of the notice of acceptance for this project, filed August 3, 1961, was attached. The second project, Project No. 1969-03, involved the construction of street paving and drainage improvements on certain streets within the city limits of Lake Charles. Jessen prepared the plans and specifications and inspected the construction work for the City. A certified copy of the notice of acceptance for this project, filed March 16, 1972, was attached. Jessen Sr. stated that since the acceptance of these projects, he was never advised nor made aware of any deficiencies in the design or construction of the improvements, of any dangerous condition of either project, or of any dangerous condition of the Woodring Street lateral.
In a supplemental supporting affidavit, Jessen Sr. stated that the existing natural drainage channel, where the accident occurred, receives water from both the City and the Drainage District's storm drainage system and surface water runoff, which runs off into the Calcasieu River. He stated that the drainage pipes placed as part of the two projects were set at either matching or just slightly higher elevations than the drainage system they replaced. Jessen Sr. stated that the scope of the two projects did not "involve or require relocation, reconfiguration, dredging, alterations, covering, fencing, signing or barricading the existing drainage channel of the west side of Goos Boulevard where the incident occurred." He further stated that Jessen was never "asked or engaged to study, plan, recommend or prepare construction documents for maintaining, relocating, reconfiguring, dredging, covering, fencing, signing or barricading the existing drainage channel on the west side of Goos Boulevard."
*848 The trial court denied Jessen's initial motion for summary judgment based on an answer to an interrogatory by the Drainage District, which stated that it paid Jessen a monthly fee to advise it on engineering matters. The trial court further held that Jessen could refile its motion after further discovery.
Jessen reurged its motion for summary judgment on the issue of peremption, submitting the affidavit of Jessen Jr. in support of its motion. Jessen Jr. stated that Jessen has an ongoing service agreement with the City, through which Jessen provides engineering services to the City in return for compensation. However, he states that the agreement does not authorize any services. He explained that the City commissions Jessen to perform engineering services through a discreet authorization for a specific project. Jessen Jr. further stated that Jessen is paid a monthly retainer by the Drainage District to attend its monthly meetings, but that the retainer does not authorize any specific service. Like the City, the Drainage District issues a discreet authorization for a specific project at its board meetings. Jessen Jr. reaffirmed that, other than the two projects already mentioned, Jessen had no further involvement with the Woodring Street lateral where the accident occurred. Jessen Jr. further stated that he served on the Open Ditch Task Force, which was a general study, but was never engaged by the task force or any public entity to act on the report and "study, plan, recommend or prepare construction documents for maintaining, locating, reconfiguring, dredging, covering, fencing, signing or barricading the existing channel on the west side of Goos Boulevard."
Considering the evidence presented, we find that Jessen has made a prima facie showing that more than ten years have lapsed since the filing of the notice of acceptance for both projects, thus, perempting Ewing's claims against it. The burden now shifts to Ewing.
At the outset, we note that Ewing objected to the introduction of Jessen Jr.'s affidavit, alleging that it was not timely filed and that it was not based upon personal knowledge and contained parole evidence, conclusory statements, opinions, and hearsay statements. However, Ewing failed to object to the introduction of the affidavit at the hearing on the motion, nor does she direct us to such an objection in the ten volume record. "To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony, and state the reasons for the objection." LaHaye v. Allstate Ins. Co., 570 So.2d 460, 466 (La.1990). Failure to object to the introduction of evidence constitutes a waiver of right to object on appeal. Id. Thus, we find no merit in this assignment.
Ewing further argues that the trial court erred in granting summary judgment in favor of Jessen since a genuine issue of material fact was raised by the Drainage District's answer to an interrogatory, which stated that Jessen "was paid a monthly fee to advise the District on engineering matters." She points out that Jessen's name appears on the Drainage District's letterhead as its engineer. She further argues that Jessen's contract with the City raises an issue material fact since a continuous relationship has existed between the two. The pertinent part of the contract provides:
The City of Lake Charles does hereby appoint and retain D.W. Jessen & Associates, Civil and Consulting Engineers, to continue serving, as in the past, by performing a variety of comprehensive engineering, surveying, and consulting services which include, but are not limited to ... investigating, reporting, providing records, data, specifications and making plans, where appropriate, to assist the various departments of the City in solving numerous minor or major problems relating to drainage ... assist *849 City in resolving drainage difficulties created by developers or individuals not conforming to good engineering practice... and in general, providing general professional advice to the City of Lake Charles by one or more members of D.W. Jessen and Associates, Civil and Consulting Engineers, within their field of expertise.
The contract further provides that Jessen will be paid an hourly rate for services provided on contracts less than $75,000. However, if a construction project exceeds $75,000 and requires a public bid, then the contract provides that Jessen will be paid on a percentage basis.
Despite the questions raised by Ewing's assertions, we find that the trial court correctly granted summary judgment in favor of Jessen. La.R.S. 9:2772 provided at the time of this accident, in pertinent part:
A. No action, whether ex contractu, ex delicto, or otherwise, including, but not limited to, an action for failure to warn, to recover on a contract or to recover damages shall be brought against any person performing or furnishing land surveying services ... including but not limited to those services preparatory to construction, or against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of an improvement to immovable property:
(1) More than ten years after the date of registry in the mortgage office of acceptance of the work by owner.
In Reeder v. North, 97-0239, p. 12-13 (La.10/21/97); 701 So.2d 1291, 1298, quoting Hebert v. Doctors Memorial Hospital, 486 So.2d 717, 723 (La.1986), the supreme court discussed the difference between peremption and prescription:
Peremption differs from prescription in several respects. Although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation (La. Civ.Code art. 1762(1)); peremption, however, extinguishes or destroys the right (La. Civ. Code art. 3458). Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. And exceptions such as contra non valentem are not applicable. As an inchoate right, prescription, on the other hand, may be renounced, interrupted, or suspended; and contra non valentem applies an exception to the statutory prescription period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues.
Ewing's argument, that Jessen's continuing relationship with both the Drainage District and the City should, in some way, prevent her claims from being extinguished, is more in the nature of a prescription argument. If we were to agree with this argument and reverse the trial court's judgment, our ruling would have the effect of suspending the peremptive period provided in La.R.S. 9:2772. This would be similar to the appellate court's holding in Reeder, where it held that the peremptive period provided by La.R.S. 9:5606 as it applied to legal malpractice actions, was suspended during the period of time that the defendant continued representing the plaintiff. However, as stated in Reeder, nothing is to interfere with the running of a peremptive period. There, the supreme court reversed the appeals court, finding that it "erroneously applied the `continuous representation rule' to suspend the peremptive statute of limitations period of La.R.S. 9:5605."
Since there is no evidence that Jessen performed any subsequent work on the Woodring Street lateral at the site of the accident, and more than ten years has passed since the most recent notice of acceptance was filed into the mortgage records on March 16, 1972, we find that *850 Ewing's claims against D.W. Jessen, Sr. and D.W. Jessen & Associates are extinguished.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed against the plaintiff-appellant, Virginia Ewing.
AFFIRMED.
NOTES
[1] Ewing listed Jessen as D.W. Jessen Civil Engineers in her First Amending and Supplemental Petition.