STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CHASTITY ARDOIN

VERSUS

MITCHELL BOURGEOIS

************

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT,
PARISH OF CAMERON, NO. 10-16088,
HONORABLE H. WARD FONTENOT, DISTRICT JUDGE

************

**MICHAEL G. SULLIVAN**
**JUDGE**

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

**AFFIRMED AS AMENDED.**

**Jack W. Caskey**
**Attorney at Law**
**Post Office Box 1052**
**Lake Charles, Louisiana  70602**
**(337) 439-8854**
**Counsel for Plaintiff/Appellee:**
    **Chastity Ardoin**
    **Gabrielle Nicole Richard**
    **Raven Brooks Bourgeois**

**Lee H. des Bordes, Jr.**
**Attorney at Law**
**7732 Goodwood Blvd., Suite A**
**Baton Rouge, Louisiana  70806**
**(225) 248-8500**
**Counsel for Defendant/Appellant:**
    **Mitchell Bourgeois**

**Mitchell Bourgeois**
**W. Baton Rouge Work Release**
**1155 Northwest Drive**
**Port Allen, Louisiana  70767**
**Defendant/Appellant:**
> **Mitchell Bourgeois**

SULLIVAN, Judge.

Mitchell Bourgeois appeals the trial court's denial of his motion to continue the trial of this matter and its awards of $325,000.00 in general damages and $12,631.31 in past and future medical expenses in favor of Chastity Ardoin. For the following reasons, we amend and affirm as amended.

*Facts*

Mitchell Bourgeois lived with Chastity Ardoin for approximately ten years. They have one child. Their relationship was stormy and sometimes violent. Over the course of three days in early May 2001, Mr. Bourgeois severely physically abused and mentally terrorized Ms. Ardoin. He was arrested and charged with aggravated battery; he pled guilty to the charge and was sentenced to five years in prison.

On May 2, 2002, Ms. Ardoin filed a civil suit against Mr. Bourgeois; he answered the petition in August 2002. There was no further action in the matter until July 24, 2003 when Ms. Ardoin's attorney withdrew as counsel of record. Mr. Bourgeois' attorney did the same on November 14, 2003. In March 2004, Ms. Ardoin filed a motion to proceed *in forma pauperis* and a motion to withdraw her demand for trial by jury. The matter was set for trial on August 2, 2004. On Wednesday, July 29, 2004, Mr. Bourgeois filed a motion to proceed *in forma pauperis* and a motion to continue the trial. Prior to the start of the trial on August 2, the trial court denied the motion for continuance and proceeded with the trial. At the conclusion of the trial, the trial court rendered judgment in favor of Ms. Ardoin awarding her $100,000.00 for assault, including kidnaping, binding, beating, cutting and burning; $200,000.00 for scarring and disability and all damages associated therewith; $25,000.00 for mental pain, anguish, grief, and fear; and $12,631.31 for past and future medicals. The trial court signed a judgment on August 4, 2004.

On August 16, 2004, Mr. Bourgeois filed a notice of intent to seek writs and another motion to proceed *in forma pauperis*. He filed a motion for appeal on November 15, 2004, and a notice of appeal on November 22, 2004.[1] He assigns two errors: the trial court's denial of his motion for continuance and the damage awards.

### *Discussion*

#### *Motion for Continuance*

Mr. Bourgeois acknowledged in his motion for continuance that he received notice of the trial date on May 15, 2004. He listed his incarceration and his inability to afford an attorney as grounds for the continuance. On appeal, he urges that the trial court abused its discretion when it denied his request for a continuance because he was not allowed "a fair opportunity to defend himself or at least prove if Ms. Ardoin's damage claims should be reduced by her comparative fault" and identifies four reasons why a continuance should have been granted: 1) no discovery had been taken; 2) Ms. Ardoin had withdrawn her request for a jury trial, and he was not knowledgeable enough to know he could request a jury; 3) the trial judge had also presided over Mr. Bourgeois' criminal proceeding and knew Ms. Ardoin's version of the events which are the basis of this suit, so he was denied a trial before a "fair and impartial tribunal"; and 4) the trial court's denial of the continuance denied Mr. Bourgeois a chance to prove that Ms. Ardoin contributed to her own injuries.

"[A] continuance may be granted in any case if there is good ground therefor." La.Code Civ.P. art. 1601. The trial court has great discretion in granting or denying a motion for a continuance, and denial of a continuance will not be disturbed on

---

[1] No notice of judgment was issued by the clerk of court. Therefore, the delays for appeal never began to run, and Mr. Bourgeois' appeal is timely. La.Code Civ.P. arts. 1913(A), 1974, 2087, and 2123. *See also Bell v. Demax Mgmt., Inc.,* 02-618 (La. 5/24/02), 819 So.2d 293; *Broussard v. Annaloro,* 265 So.2d 648 (La.App. 3 Cir. 1972).

appeal unless the trial court is shown to have abused its discretion. *Jackson v. Royal Ins. Co.*, 97-723 (La.App. 3 Cir. 12/17/97), 704 So.2d 424. Whether a trial court should grant or deny a continuance depends on the particular facts of each case. Some factors to consider are diligence, good faith, and reasonable grounds. *Demopulos v. Jackson*, 33,560 (La.App. 2 Cir. 6/21/00), 765 So.2d 480. Fairness to both parties and the need for orderly administration of justice are additional considerations in deciding whether to grant or deny a continuance. *Gilcrease v. Bacarisse*, 26,318 (La.App. 2 Cir. 12/7/94), 647 So.2d 1219, *writ denied*, 95-421 (La. 3/30/95), 651 So.2d 845.

We recognize that Mr. Bourgeois' incarceration presented a problem with respect to his defense of this matter. However, he was not diligent in seeking relief. He waited more than sixty days after he received notice of the trial date to file his motion for continuance and then filed it only three business days before the trial.

It is not unusual for individuals who are incarcerated to be parties to civil litigation, either as plaintiff or defendant. A *writ of habeas corpus ad testificandum* is the means for such individuals to be present in court. *See State v. Property Located at No. 70 Oakland Street*, 98-929 (La.App. 5 Cir. 1/26/99), 727 So.2d 1240, *writ denied*, 99-1095 (La. 9/3/99), 747 So.2d 540. Prisoners who are parties to litigation utilize this mechanism to obtain their presence and the presence of witnesses who are also incarcerated in court. *See Smith v. Ieyoub,* 01-1517 (La.App. 3 Cir. 3/6/02), 809 So.2d 1256; *Jones v. Phelps*, 95-607 (La.App. 1 Cir. 11/9/95), 665 So.2d 30, *writ denied*, 95-2907 (La. 2/2/96), 666 So.2d 1104; *Richardson v. Reeves,* 600 So.2d 138 (La.App. 2 Cir. 1992). Mr. Bourgeois had time to obtain this information and file such a writ before the trial date. Additionally, Mr. Bourgeois did not set forth in his

3

motion for continuance that he attempted to obtain new representation after his attorney of record withdrew.

Mr. Bourgeois also cited the trial court's failure to appoint an attorney to represent him as a basis for a continuance. As a general rule, defendants in civil litigation are not entitled to appointed counsel to represent them. *Lay v. McElven*, 96-1325 (La.App. 1 Cir. 3/27/97), 691 So.2d 311, *writ denied*, 97-2398 (La. 2/6/98), 709 So.2d 730. However, it has been held that constitutional due process requires the appointment of counsel to indigents in civil matters when fundamental constitutional rights are involved. *Id.* The court in *Lay* determined that an incarcerated, indigent plaintiff's suit to recover damages for a violation of his civil rights was not a fundamental constitutional right which would entitle him to appointed counsel. In *Ford Motor Credit Co. v. George*, 36,893 (La.App. 2 Cir. 3/5/03), 839 So.2d 1042, the court determined that a suit on a retail installment contract does not involve issues of fundamental constitutional rights and that an indigent defendant in such a suit is not entitled to appointed counsel.

We conclude that Mr. Bourgeois was not entitled to appointed counsel in this matter; therefore, his claim to entitlement of appointed counsel was not a valid ground for a continuance.

In his appellate brief, Mr. Bourgeois contends the trial court's denial of the motion for continuance was an abuse of discretion for reasons other than those set forth in his motion for continuance. "A motion for a continuance shall set forth the grounds upon which it is based . . . ." La.Code Civ.P. art. 1603. Pursuant to Article 1603, the grounds for continuance asserted on appeal but not set forth in the motion for continuance could not serve as a basis for a continuance in the trial court. Nor can

4

it serve as basis for a determination on appeal that the trial court abused its discretion in denying the continuance because the trial court had no knowledge of these grounds.

The trial court did not abuse its discretion in denying Mr. Bourgeois' request for a continuance. This assignment is without merit.

### Excessive Damages

In his second assignment of error, Mr. Bourgeois argues that the trial court's damage awards were excessive and not supported by admissible evidence or by Ms. Ardoin's injuries. He first complains that a report prepared by a plastic surgeon was inadmissible hearsay. An evidentiary issue is not preserved for appellate review, unless a contemporaneous objection to the evidence was entered. La.Code Evid. art. 103; *see also*, *Ewing v. State ex rel. Dep't of Transp. and Dev.,* 99-1556 (La.App. 3 Cir. 3/15/00), 757 So.2d 843. There was no contemporaneous objection to this report; therefore, this alleged error was not preserved for appeal.

Mr. Bourgeois next argues that the trial court's award of past and future medical expenses was error because the awarded expenses were simply itemized on a list and not documented by a certified medical record, pursuant to La.R.S. 13:3715, or an affidavit, pursuant to La.R.S. 13:3714. To recover past medical expenses a "plaintiff must prove that, more probable than not, the medical treatment was necessitated by trauma suffered in the accident." *Esté v. State Farm Ins. Cos.*, 96-99, p. 10 (La.App. 3 Cir. 7/10/96), 676 So.2d 850, 857. A plaintiff's claim for past medical expenses is sufficient *when supported by a bill*, unless there is contradictory evidence or reasonable suspicion that the bill is unrelated to the accident. *Id.*

In support of her claim for past medical expenses, Ms. Ardoin introduced an itemized list of expenses prepared by William Daigle, the Victims Assistance Coordination for the Cameron Parish District Attorney's office, and she testified that the amounts itemized on the list represent treatment she received as a result of the injuries inflicted by Mr. Bourgeois. Ms. Ardoin did not introduce copies of all of the invoices representing the charges incurred for her past medical treatment. However, certified copies of records of her healthcare providers were introduced into evidence and an invoice in the amount of $177.89 is included in the records of The Clinic. Additionally, the report of Dr. Darrell Henderson, a plastic surgeon that Ms. Ardoin consulted, sets forth a charge of $300.00 for his examination of Ms. Ardoin.

It was error for the trial court to award past medical expenses which are not documented by a statement, copies of invoices, or a statement of the health care provider; therefore, we amend the trial court's award for past medical expenses and award $477.89.

A plaintiff must establish that it is more probable than not that future medical expenses are indicated, their probable costs, and that they will be incurred. *Roberts v. State*, 00-778 (La.App. 3 Cir. 11/2/00), 776 So.2d 519, *writs denied*, 00-3307, 00-3324 (La. 2/2/01), 784 So.2d 8, 644. Ms. Ardoin was examined by Dr. Darrell Henderson, a plastic surgeon, to determine whether the scar on her buttock could be removed or reduced. Dr. Henderson outlined in his written report two different procedures and the expenses associated with each that he could perform to reduce the scar. He stated that the purpose of the surgery was to reduce the size of the scar on Ms. Ardoin's buttock, explaining that it cannot be completely removed. Ms. Ardoin testified that she is affected by the sight of the scar and wants it removed.

Dr. Henderson outlined costs for two procedures; he recommended that Ms. Ardoin undergo the second procedure because it would result in a greater reduction of the scar or not have surgery at all. The trial court awarded $7,740.00, Dr. Henderson's estimate of the cost of the second procedure, as *past* medical expenses. The trial court awarded $2,000.00 for future medical expenses. We amend this award to reflect the expenses associated with Dr. Henderson's recommended procedure, $7,740.00.

### *General Damages*

Mr. Bourgeois objects to the trial court's award of $325,000.00 in general damages, arguing that they are excessive. A trial court's assessment of damages is a determination of fact that is entitled to great deference on review. *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70. When reviewing an award of general damages, "a court of appeal is required to focus on the total award and not on each individual item." *Richard v. Teague*, 92-17 (La.App. 3 Cir. 5/4/94), 636 So.2d 1160, 1174, *writ denied,* 94-1934 (La. 11/11/94), 644 So.2d 388. Our review of the record satisfies us that the trial court's award of general damages in the amount of $325,000.00 for Mr. Bourgeois's assault on Ms. Ardoin is reasonable.

Ms. Ardoin testified in detail about her ordeal. In early May 2001, she and Mr. Bourgeois traveled from Denham Springs, where they lived together, to Moss Bluff for a motorcycle racing event. They sold t-shirts and other products at the event. At approximately 4:00 a.m. on May 6, 2001, Ms. Ardoin revealed to Mr. Bourgeois that she had had a sexual encounter with another man. In response, Mr. Bourgeois punched her and ripped her clothes off. At daylight, they left Moss Bluff and traveled to Cameron Parish, where Mr. Bourgeois' abuse got worse according to Ms. Ardoin. He threatened to remove a tattoo she had on her buttock

and threatened her life. Mr. Bourgeois attacked Ms. Ardoin again on May 7. On May 8, Mr. Bourgeois taped her up with duct tape; he taped her mouth first to keep her from screaming, then her wrists and legs to keep her from fighting and resisting him. He cut her clothes off of her and began cutting her buttock, telling her he was cutting her tattoo off. She described his next actions:

> He left the room after he was through cutting me, and he came back in. And I was struggling to get out of this tape. And he came back. Once he came in, I was wrestling as much as I could to try to get away from him, and he pinned me down and had me bent over. I didn't see the spatula, but I felt it.

Mr. Bourgeois had applied a hot metal spatula to the area on her buttock he had cut. Ms. Ardoin testified that during this attack Mr. Bourgeois was in a rage, that she feared for her life, and that she believed him when he told her that he was going to feed her to the alligators. She described her pain during the cutting and burning as excruciating. She fought Mr. Bourgeois and screamed during the attack. Then, it all stopped. Mr. Bourgeois left the room, then returned and bandaged her wound, cut the duct tape, and left her. After he left, she dressed and ran to some apartments to use a telephone where she called her father and the police. Ms. Ardoin testified that over the course of these three days, Mr. Bourgeois also beat her, hit her over the head, and kicked her.

The police brought Ms. Ardoin to the police station where an ambulance picked her up and transported her to South Cameron Hospital where she was treated for her injuries. She also sought treatment at Women and Children's Hospital, Lake Charles Memorial Hospital, and Moss Regional Hospital in Lake Charles. She testified that the treatment for the burn was very painful and expressed that she would

8

not want anyone to experience such pain. She further testified that there are occasions when the scar still hurts.

Ms. Ardoin saw two plastic surgeons. The first was for treatment of the burn and an opinion on removal of the scar. When this doctor told her he had done all that he could do and recommended no further treatment, Ms. Ardoin sought a second opinion from Dr. Henderson because she wanted to have the scar removed.

In his report, Dr. Henderson described the scar as twelve and one-half centimeters by eight centimeters with two areas of thick hypertrophic scar tissue measuring two and one-half centimeters by two centimeters. He explained that he would surgically excise the very large scar and the smaller areas of hypertrophic scar; it will involve a large excision of tissue. The adjacent skin would be expanded with intraoperative skin expanders to stretch the adjacent skin to close over the area of the excised scar. The result would be a linear scar in excess of twelve and one-half centimeters. Ms. Ardoin would be under general anesthesia and hospitalized overnight; she would be released with a bandaged wound. Due to the location of the wound, the pressure and tension of sitting might break open the wound, Dr. Henderson stated that Ms. Ardoin would have to keep her hip straight for several weeks and would be limited to lying or standing most of the time. He projected that she would not be able to work for four to six weeks following the surgery. He expects the new scar to improve gradually over a period of one to one and one-half years. Finally, Dr. Henderson observed that, in his experience, patients like Ms. Ardoin who undergo this type of surgery would rather have a surgical scar than the original scar which evokes unpleasant memories of what caused the scar.

In *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), the supreme court instructed that an appellate court should rarely disturb a general damage award:

> [T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

We cannot say that the trial court's general damage award is greater than what a reasonable trier of fact could assess to a plaintiff who suffered the physical and mental abuse Ms. Abshire suffered at the hands of Mr. Bourgeois.

### *Disposition*

The judgment of the trial court is amended to award past medical expenses in the amount of $477.89 and future medical expenses in the amount of $7,740.00 and affirmed as amended. Costs of this appeal are assessed to Mitchell Bourgeois.

**AFFIRMED AS AMENDED.**