758 So.2d 856 (2000)
Roy JONES
v.
UNIVERSAL FABRICATORS.
No. 99-1370.
Court of Appeal of Louisiana, Third Circuit.
February 9, 2000.
Writ Denied May 12, 2000.
*858 R. Scott Iles, Lafayette, LA, Counsel for Plaintiff-Appellee.
Kraig Thomas Strenge, Lafayette, LA, Counsel for Defendant-Appellant.
Court composed of JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD, and ELIZABETH A. PICKETT, Judges.
SAUNDERS, Judge.
This is a workers's compensation case. The workers' compensation judge (WCJ) declared Roy Jones disabled, reinstated his benefits from the date of termination, awarded rehabilitation services, and penalties and attorney's fees in the amount of $2,000.00. We affirm the award of compensation benefits and rehabilitation services. We increase attorney's fees to $7,500.00 for the work below and award $2,500.00 for work rendered on appeal. We order Defendant to pay penalties in the amount of the statutory maximum of $2,000.00 or 12% of unpaid benefits, whichever is greater.

FACTS
In August 1995, Universal Fabricators (Defendant) employed Roy Jones (Claimant) as a pipe fitter. Claimant injured his back on January 21, 1997, while in the course and scope of his employment. The injury occurred while Claimant and a helper were lifting a piece of channel iron that weighed 50 to 70 pounds. He immediately complained of his injuries to his safety supervisor, Jack Hallett. On the following day, Hallett took Claimant to Rose Chiropractic Clinic and Dr. Timothy J. Rose attended to Claimant. Dr. Rose examined Claimant twice and concluded that his injuries were a direct result of the work-related accident. Dr. Rose's evaluation stated that "[i]t is my professional opinion based on the accident history and examination and findings that the patient's condition is a direct result of the injury at issue." However, Claimant's treatments with Dr. Rose were ineffective. Defendant then referred Claimant to Dr. J.L. Comeaux.
On January 27, 1997, Dr. Comeaux diagnosed Claimant with a lumbosacral strain and ordered conservative treatment in the form of Medrol Dose Pack, muscle relaxants, analgesics, heat, and exercise instructions. Dr. Comeaux's treatment methods failed to reduce Claimant's pain. Claimant requested that Frank Pippin, Defendant's insurance adjuster, refer him to a specialist. Mr. Pippin made an appointment with Dr. Jerald Watts.
Dr. Watts, an orthopedic surgeon, began treating Claimant on February 5, 1997. Dr. Watts prescribed pain medication and recommended physical therapy. Again, conservative treatment failed to correct Claimant's condition. At this time, Dr. Watts referred Claimant to Laborde Diagnostics on April 14, 1997, for a lumbar myelogram and a post-myelographic CT scan. According to these objective tests, Claimant suffered from two herniated lumbar discs. Subsequently, Dr. Watts notes stated that "[i]n view of the longevity of this patient's complaint, I think we should ask him to see a neurosurgeon for consultation. I believe he may well be a candidate for operative intervention[.]"
On June 4, 1997, Dr. Patrick Juneau, a neurosurgeon, examined Claimant, viewed the diagnostic tests, and concluded that Claimant was a candidate for a hemilaminectomy and a foraminotomy. At this time, Claimant thought it prudent to obtain a second opinion concerning surgery and requested that Dr. Robert Rivet examine him. However, Dr. Rivet was ill and unable to comply with Claimant's request. Claimant, who was hesitant about surgery, chose to remain under the conservative treatment of Dr. Watts.
*859 In January 1998, Dr. Watts explored the possibility of Claimant returning to work. Considering that a year had elapsed since the accident and that Claimant did not favor surgery, Dr. Watts gave Claimant a light-duty work release and forwarded a copy to Defendant on January 19, 1998. Defendant responded and informed Dr. Watts that "[w]e do not have a light duty job for Roy [Claimant] at this time."
On February 13, 1998, the Center for Work Rehabilitation, Inc. forwarded Plaintiff a letter informing him of a Functional Capacity Evaluation (FCE) scheduled for March 9, 1998. According to the letter, the Center for Work Rehabilitation required Claimant to attend the FCE on a daily basis for a week. On February 23, 1998, Claimant's counsel objected to the FCE and requested that another facility perform the test. The objection stated that: "[f]or the record, my client objects to having a functional capacity assessment done at the Center for Work Rehabilitation, Incorporated, given their experience of finding everybody that walks through the door as a symptom magnifier." Defendant denied claimant's request for a different facility. Claimant attended the March 9 FCE session, but left after only five hours because of pain in his back. Due to this experience and continual pain, he canceled the remaining sessions. Claimant made several requests for a copy of the FCE but Paul Fontana, the director of the Center for Work Rehabilitation, failed to comply with the request. Finally after a threat of judicial intervention, Fontana supplied the FCE which labeled Claimant as a Type II Symptom Magnifier.
Mr. Fontana's evaluations were forwarded to Dr. Watts who strongly disagreed with the Type II Symptom Magnifier label. Dr. Watts concluded that Dr. Juneau, the neurosurgeon, should reevaluate Claimant. In his deposition, Dr. Juneau's opinion on this issue agreed with Dr. Watts and stated that he found no evidence of symptom magnification.
On May 26, 1998, Laborde Diagnostic performed an MRI on Claimant. Dr. Juneau reviewed the MRI and requested that Claimant undergo another lumbar myelogram and post-myelographic CT scan to reevaluate the possibility of surgery.
In September 1998, Dr. Clifton Shepherd replaced Dr. Watts as Claimant's orthopedic surgeon. After one examination, Dr. Shepherd observed inconsistencies in Claimant's symptoms and suggested additional diagnostic testing and a reevaluation by Dr. Juneau. The second set of tests was performed on September 21, 1998.
On October 26, 1998, Dr. Juneau reviewed the tests and concluded that Claimant's condition improved without surgical intervention and that Claimant was no longer a candidate for surgery. At this point, Dr. Juneau ordered another FCE to assess Claimant's ability to work. Defendant's insurer refused the request.
On November 2, 1998, Dr. Shepherd, in his report, stated that the disc had resolved itself and that Claimant could return to work with no restrictions. Subsequently, on November 24, 1998, Defendant terminated Claimant's benefits.
At this point, Claimant once again requested a second FCE. Dr. Juneau's requests made in July, October, and December 1998 were also denied by Defendant. On January 5, 1999, Claimant filed a claim against Defendant requesting a reinstatement of benefits and a second FCE.
Two weeks prior to trial, in May 1999, Chris Barras of the Physical Therapy Center of Lafayette, conducted the second FCE. In his report, Barras stated that Claimant could return to light to medium-duty work activities but that Claimant's previous job entailed heavy manual labor. Thus, Barras concluded that Claimant's previous job was beyond his work capabilities.
In July 1999, the WCJ held that Defendant unilaterally terminated Claimant's benefits after the undisputed payment of *860 benefits for nearly two years. Relying on Nugent v. Department of Health & Human Resources, 617 So.2d 1347 (La.App. 3 Cir.1993), the WCJ concluded that Defendant, who failed to seek the approval of the Office of Workers' Compensation, terminated the benefits at its own peril and awarded Claimant statutory penalties, attorney's fees, rehabilitation counseling, and reinstated his benefits from the date of termination.

LAW AND ANALYSIS

Award of Compensation Benefits
Defendant's first assignment of error is that the WCJ erred in awarding Claimant temporary total compensation benefits. Disability can be proven by both lay and medical testimony. The hearing officer should weigh all evidence, medical and lay, to determine whether or not the claimant has met his burden. Simpson v. S.S. Kresge Co., 389 So.2d 65 (La.1980); Fritz v. Home Furniture-Lafayette, 95-1705 (La.App. 3 Cir. 7/24/96); 677 So.2d 1132. Whether or not Claimant is disabled is a question of fact. Granger v. Nelson Logging, 96-223 (La.App. 3 Cir. 12/4/96); 685 So.2d 400. The hearing officer's findings concerning disability should be given great weight, and should not be overturned on appeal unless clearly wrong. Bruno v. Harbert Int'l, Inc., 593 So.2d 357 (La.1992); Watkins v. Asphalt Assoc., Inc., 96-249 (La.App. 3 Cir. 12/4/96); 685 So.2d 393.
The record reflects that Claimant suffered a work-related accident. Defendant immediately and without question paid Claimant benefits for twenty-two months. Claimant visited four different physicians, all chosen by Defendant, on twenty-six different occasions and none suggested that Claimant's symptoms were exaggerated or false. Shortly after the accident, Claimant underwent objective tests which revealed two herniated discs. In fact, it was concluded by the physicians that Claimant required immediate surgery.
Despite this mountain of medical evidence indicating disability, Defendant asserts that Dr. Juneau and Dr. Shepherd's six 1998 examinations, justified the unilateral termination of Claimant's benefits. We strongly disagree. In Stelly v. Guy Scroggins, Inc., 96-401 (La.App. 3 Cir. 10/9/96); 682 So.2d 782, writ denied, 96-3060 (La.2/7/97); 688 So.2d 503, this court emphasized that, in considering the evidence presented, the testimony of a claimant's treating physician should ordinarily be afforded more weight than a physician who merely conducts an examination. After only one set of diagnostic testing and an invalid FCE, Defendant unilaterally terminated Claimant's benefits.
Dr. Watts who treated Claimant for over a year stated that Claimant was not a symptom magnifier and that Claimant displayed abnormalities on his diagnostic testing. Moreover, Dr. Juneau, in his deposition, stated "[t]here is radiographic improvement, clearly. But clinically, he didn't improve ... he's got some degenerative or wear and tear in the muscles and ligaments in his low back. And that does set him up to have some referred pain down in his legs." Dr. Juneau also stated that Claimant is prone to have a re-injury.
Considering the record as whole and the deference given to the WCJ, we affirm the Office of Workers' Compensation's ruling of disability and award of temporary total disability benefits.

Award of Vocational Rehabilitation Services
Defendant's second assignment of error is that the WCJ erred in awarding Claimant vocational rehabilitation services for the stated purpose of returning Claimant to employment within the restrictions outlined in Mr. Barras' report. La.R.S. 23:1226 A states that "[w]hen an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services." In the instant case, Defendant does not *861 dispute the fact that Claimant suffered a work-related injury. According to the DICTIONARY OF OCCUPATIONAL TITLES, 2 (4th ed.1991), a piper fitter is a heavy work capacity job. Barras, in his FCE report, opined that Claimant can return to work but only in a light to medium capacity position. Additionally, Dr. Juneau, in his deposition, stated that "I would agree with this conclusion, is that he's [Claimant] not a candidate to go back as a pipe fitter in a heavy duty job." At trial, Defendant conceded that there were no positions fitting the description of light to medium-duty.
In the alternative, Defendant refers to the portion of Barras' report that states "[t]he physical abilities do match the job description of pipe fitter if the accommodations can be made[.]" and argues that Claimant can return to his job as a pipe fitter if a helper aids him in lifting the 50 to 60 pound items.
We disagree. On the day of the accident, Claimant and a helper were lifting a 50 to 70 pound piece of chattel iron. Although a helper was present, Claimant still suffered injuries which made him a candidate for surgery. Essentially, Defendant is requesting that Claimant, whose healthy back was weakened by the first injury, engage in the same activities that caused the first injury. Utilizing common sense, it is evident that a return to the previous position would only cause his condition to deteriorate since he has not undergone surgery for his two herniated discs and he still suffers from pain. Moreover, Dr. Juneau, in his deposition, stated that Claimant was prone to re-injury and that he suffers from some degenerative wear and tear. Thus, we affirm the WCJ award of rehabilitation services because Claimant is unable to earn wages equal to wages earned before the injury.

Award of Attorney's Fees and Statutory Penalties
Defendant's third assignment of error is that WCJ erred in applying Nugent, 617 So.2d 1347, and awarding Claimant statutory penalties and attorney's fees. Claimant, in his answer, requests that we increase the amount of attorney's fees. While we concede that Nugent is inapplicable, based on other cases cited below, we increase attorney's fees to $7,500.00 for work at the hearing level, $2,500.00 for work rendered on appeal. We order Defendant to pay penalties in the amount of the statutory maximum of $2,000.00 or 12% of unpaid benefits, whichever is greater.
A claimant is entitled to penalties and attorney's fees if workers' compensation benefits are terminated arbitrarily, capriciously, or without probable cause by the employer. La.R.S. 23:1201 F; La.R.S. 23:1201.2; Faul v. Bonin, 95-1236 (La.App. 3 Cir. 8/7/96); 678 So.2d 627, writ denied, 96-2221 (La.11/15/96); 682 So.2d 769. Whether termination of workers' compensation benefits is arbitrary, capricious, or without probable cause, for purposes of determining entitlement to penalties and attorney's fees, depends primarily on facts known to the employer or insurer at the time of its action. Creel v. Concordia Elec. Co-op., 95-914 (La.App. 3 Cir. 1/31/96); 670 So.2d 406, writ denied, 96-577 (La.4/19/96); 671 So.2d 923. An award of penalties and attorney's fees in workers' compensation cases is essentially a question of fact and should not be reversed unless clearly wrong. Ferrier v. Jordache-Ditto's, 94-1317 (La.App. 3 Cir. 5/17/95); 662 So.2d 14, writ denied, 95-2865 (La.2/2/96); 666 So.2d 1100.
We find that Claimant is entitled to statutory penalties and attorney's fees. Our review of the record reveals several actions which we consider arbitrary and capricious. First, Defendant terminated Claimant's benefits after only one set of diagnostic tests and an invalid FCE. In Stegall v. J & J Exterminating, 94-1279 (La.App. 3 Cir. 3/1/95); 651 So.2d 400, 403, we found that "penalties and attorney's fees have been imposed where the insurer *862 gathers incomplete data in preparing the claim[.]"
The WCJ, in the instant case, stated that: "[d]espite the fact defendant was well aware claimant had a condition that at one time warranted immediate surgical intervention, the employer nevertheless terminated the temporary total disability benefits of claimant without prior approval of this court."
Dr. Juneau, in July, October and December 1998 requested a second FCE. Nevertheless, Defendant refused this request and terminated Claimant's benefits. To emphasize the importance of a second FCE, Dr. Juneau in a January 1999 letter, stated that "[s]ince the results of that Functional Capacities Evaluation [referring to the first FCE] were not accurate, I think it is only fair to the patient to allow that evaluation to be repeated. I think it is similar to obtaining a second medical opinion." It was not until May 1999, some ten months after the initial request, that Claimant underwent the second FCE. Considering the substantial time delay, we find that the second FCE was not timely authorized warranting penalties and attorney's fees. Considering the record as a whole, Defendant acted in an arbitrary and capricious manner by terminating Claimant's benefits based on incomplete data.
Defendant also failed to provide prompt rehabilitation services as required in La. R.S. 23:1226 A and is currently appealing this issue. La.R.S. 23:1226 A provides that the employee shall be entitled to prompt rehabilitation services when the employee has suffered an injury which precludes him from earning wages equal to wages earned prior to the injury. In the instant case, Claimant is unable to earn wages equal to wages earned prior to the injury. Although, La.R.S. 23:1226, the vocational rehabilitation statute, does not authorize an award of penalties and attorney's fees, neither does it preclude such an award. Dubois v. La. Forest Ind., 98-895 (La.App. 3 Cir. 12/9/98); 722 So.2d 409, writ denied, 99-49 (La.2/26/99); 738 So.2d 586.
For the reasons cited above, we find that the WCJ did not err in awarding Claimant attorney's fees and penalties. Defendant shall pay penalties in the amount of the statutory maximum of $2,000.00 or 12% of unpaid benefits, whichever is greater. Attorney's fees are discussed below.

Increase of Attorney's Fees
Claimant, in his answer to Defendant's appeal, suggests that the WCJ erred in awarding only $2,000.00 in attorney's fees for work rendered at the hearing level and requests that we assess additional attorney's fees for services rendered in association with the appeal. According to Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981), factors used in determining attorney's fees in workers' compensation cases are the degree of skill and ability exercised, the amount of the claim and the amount of time devoted to the case.
Considering the efforts of Claimant's attorney, we find the $2,000.00 award of attorney's fees unreasonably low. It is clear from the record that the attorney spent a considerable amount of time over a three-year period pursuing his client's case and vigorously enforcing his rights. Also, Claimant is entitled to additional attorney's fees in connection with the thorough brief filed on appeal. Aguillard v. Industrial Const. Co., Inc., 542 So.2d 774 (La. App. 3 Cir.1989). For the efforts in the court below we increase the award of attorney's fees to $7,500.00 and award $2,500.00 for the work done on appeal.
We emphasize that adequate attorney's fees in workers' compensation cases is the basis for an injured employee obtaining effective counsel. La.R.S. 23:1221, which authorizes attorney's fees, encourages the retention of effective counsel by an employee who is injured, unemployed and unable to pay for capable representation.
It is evident that an employee in workers' compensation cases by definition is *863 placed in a disadvantageous position. The employee is injured, unemployed and often totally lacking in financial resources. In contrast, the employer has the financial means to obtain attorneys to prepare and argue its case. The primary purpose of workers' compensation is to protect injured employees from impoverishment. If an employee is arbitrarily deprived of benefits, the attorney who litigates on his behalf and is successful at showing arbitrary and capricious conduct on the part of the employer, has aided not only his client but also the administration of the workers' compensation system. This work is very important as it helps discourage others who might seek to further their own economic fortune at the expense of persons injured in their employ. Considering these goals of workers' compensation, we find that an increase in attorney's fees is warranted.

DECREE
For the foregoing reasons, we affirm the hearing officer's award of disability benefits and rehabilitation services. We affirm the award of statutory penalties in the amount of the statutory maximum of $2,000.00 or 12% of unpaid benefits, whichever is greater. We increase the WCJ's award of $2,000.00 in attorney's fees to award $7,500.00 for work rendered at the hearing level and $2,500.00 for this appeal.
We assess all costs of this appeal to the Defendant.
AFFIRMED AS AMENDED IN PART; AND RENDERED.