STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-492

DEXTER MITCHELL

VERSUS

ARTCRETE, INC.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 07-03356
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and
Billy Howard Ezell, Judges.

AFFIRMED IN PART, AMENDED IN
PART, AND REVERSED IN PART.

George A. Flournoy
FLOURNOY & DOGGETT (APLC)
P. O. Box 1270
Alexandria, LA 71309
Telephone:  (318) 487-9858
COUNSEL FOR:
 Plaintiff/Appellant - Dexter Mitchell

James J. Hautot, Jr.
Jason E. Wilson
JUDICE & ADLEY
926 Coolidge Boulevard
Lafayette, LA 70505
Telephone:  (337) 235-2405
COUNSEL FOR:
 Defendant/Appellee - Artcrete, Inc.

**THIBODEAUX, Chief Judge.**

The plaintiff, Dexter Mitchell, appeals a judgment of the Office of Workers' Compensation (OWC) in favor of the defendant, Artcrete, Inc., (1) denying Mitchell indemnity benefits for the period of July 16, 2007 through October 23, 2007; (2) refusing to order that Artcrete pay medication expenses in the amount of $182.06 and indemnity benefits for the period of May 18, 2007 through May 25, 2007; (3) refusing to acknowledge Artcrete's stipulations regarding its duty to pay these medication expenses as well as the indemnity benefits due for the week of May 18, 2007 through May 25, 2007; (4) denying Mitchell's contention that Artcrete unreasonably delayed the resumption of indemnity benefits after October 24, 2007; and, (5) awarding Mitchell only $2,500 in attorney fees.

For the following reasons, we affirm the judgment with respect to Mitchell's benefit payments for the period from July 16, 2007 through October 23, 2007 and with respect to Artcrete's entitlement to a credit for overpaid benefits.[1] As to the prescription benefits and as to the benefits paid for the week of May 18, 2007 through May 25, 2007, we reverse and award both penalties and attorney fees for Artcrete's failure to pay those benefits.

Evidence that on April 27, 2007, Mitchell sustained injuries while in the course and scope of his employment is well-supported and is not in dispute. His ability to fully return to work following those injuries and Artcrete's timeliness in payment of benefits and medication expenses to treat those injuries are in dispute, however. We find that Mitchell was released for full duty by his physician on July 16, 2007, and, thus, was not entitled to benefits for the period of July 16, 2007

---

[1] The workers' compensation judge (WCJ) awarded a credit in the amount of $120 to Artcrete for monies earned by Mitchell at the Natchitoches Times. Moreover, the WCJ assessed a $2,000 penalty against Artcrete for failing to timely pay for Mitchell's physical therapy treatment. These findings are not in dispute, so they will not be addressed in detail here.

through October 23, 2007. Moreover, though Artcrete timely remitted payment for some of Mitchell's expenses and benefits, it did not do so for other expenses and benefits. Thus, we find that Mitchell is entitled to an award of penalties in the amount of $8,000 and attorney fees in the amount of $5,000 for work done at the trial level in this case and an additional $3,000 for work done on this appeal.

## I.

## ISSUES

We must decide whether:

(1) the OWC manifestly erred in denying Mitchell indemnity benefits for the period of July 16, 2007 through October 23, 2007;

(2 the OWC manifestly erred in refusing to order that Artcrete pay medication expenses in the amount of $182.06 and indemnity benefits for the period of May 18, 2007 through May 25, 2007;

(3) the OWC manifestly erred in refusing to acknowledge Artcrete's stipulations regarding its duty to pay said medication expenses as well as the benefits due for the week of May 18, 2007 through May 25, 2007;

(4) the OWC manifestly erred in finding that Artcrete acted reasonably in delaying the resumption of indemnity benefits after October 24, 2007; and,

(5) the OWC manifestly erred in awarding Mitchell only $2,500 in attorney fees.

## II.

## FACTS AND PROCEDURAL HISTORY

Mitchell was employed by Artcrete, a concrete manufacturer, in Natchitoches, Louisiana. On April 27, 2007, a pallet of concrete fell on Mitchell's right foot. Mitchell immediately reported the incident to his supervisor, and Mitchell

2

was taken to a local hospital for evaluation. The next day, equipped with crutches, Mitchell attempted to return to work at Artcrete, but the company told Mitchell that it had no work suitable for him, given his limited mobility.

On May 7, 2007, Mitchell filed a claim for indemnity benefits with the Office of Workers' Compensation. At the time Mitchell filed his claim, no indemnity benefits were due to him. Indeed, immediately following the accident, and for three weeks thereafter, Artcrete continued to pay Mitchell's full wages. Artcrete did not pay Mitchell anything for the week of May 18, 2007 through May 25, 2007, but the company began paying indemnity payments to Mitchell in the amount of $213.50 per week beginning on May 25, 2007.[2]

On June 27, 2007, Dr. Stephen Cox, Mitchell's primary care physician, evaluated Mitchell and released him to full-duty work effective July 17, 2007. Dr. Cox scheduled a six-week follow-up visit, but Mitchell did not return to Dr. Cox's office until October 24, 2007.

Because Mitchell was released to work by Dr. Cox, Artcrete discontinued benefit payments on August 3, 2007. Following his release to work on July 16, 2007, Mitchell secured temporary employment as a delivery person for the Natchitoches Times. In Fall 2007, however, Mitchell experienced recurring pain in his injured foot. On October 24, 2007, Dr. Cox reevaluated Mitchell and placed him on restriction from all work. Mitchell's counsel demanded that Artcrete promptly resume payment of indemnity benefits, but Artcrete did not do so until December 2007.

---

[2]At trial, the parties stipulated that the correct compensation rate for Mitchell was $213.50 weekly, or $427 paid bi-weekly, as Mitchell received income from his employer on a bi-weekly basis.

III.

## LAW AND DISCUSSION

### Standard of Review

The supreme court articulated the standard of review in workers' compensation cases as follows:

> In worker's compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC's findings of fact is the "manifest error-clearly wrong" standard. *Brown v. Coastal Construction & Engineering, Inc.*, 96-2705 (La.App. 1 Cir. 11/7/97), 704 So.2d 8, 10, (citing *Alexander v. Pellerin Marble & Granite*, 93-1698, pp. 5-6 (La. 1/14/94), 630 So.2d 706, 710). Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. *Alexander*, 630 So.2d at 710. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Robinson v. North American Salt Co.*, 02-1869 (La.App. 1 Cir. [6/27/03]), 865 So.2d 98, 105.

*Dean v. Southmark Const.*, 03-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117.

### Indemnity Benefits for July 16, 2007 through October 23, 2007

Mitchell contends that the WCJ erred in refusing to award payment and penalties for Artcrete's failure to provide indemnity benefits for the period of July 16, 2007 through October 23, 2007. Dr. Cox evaluated Mitchell on June 26, 2007, and concluded that Mitchell could return to full duty at work. Specifically, Dr. Cox stated, "At this time, we are going to return Mr. Mitchell back to his work on 07/16/2007 . . . . I will return him to full duty. If he has any problems after that, we will reevaluate him but he should be fully healed and be able to return to full activity."

4

Mitchell attempted to find work following Dr. Cox's release, and, indeed, Mitchell worked delivering papers for the Natchitoches Times in September 2007.  On October 24, 2007, Dr. Cox again evaluated Mitchell, and recommended that Mitchell rest his foot.  Dr. Cox restricted Mitchell from all work.

Mitchell asserts that he continued to suffer pain and discomfort in his foot after Dr. Cox released him to full duty in July 2007.  He argues that he was not "cured" of his injuries and that Dr. Cox's work release was "conditional."  Moreover, Mitchell contends that he should not be penalized for Dr. Cox's busy schedule and for Mitchell's inability to schedule an appointment with Dr. Cox before October 24, 2007.

The WCJ disagreed.  The WCJ noted that Dr. Cox's medical release was a full-duty release to work and that Mitchell did, indeed, attempt to look for work during that time.

Appellate courts should not disturb findings of fact absent manifest error. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978).  In *Arceneaux*, the supreme court spelled out a two part test for review of facts:

> (1) The appellate court must find from the record that there is a reasonable factual basis for the findings, and
>
> (2) The appellate court must further determine that the record establishes that the findings are not clearly wrong.

In *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987), the supreme court cited *Arceneaux,* then further stated:

> [I]f an appellate court concludes that the trial court's factual findings are clearly wrong, the mere fact that some record evidence appears which would furnish a reasonable factual basis for the contested findings does not require affirmance.  *Davis v. Owen*, 368 So.2d 1052, 1056 (La.1979).  Although appellate courts must accord great weight to the factual findings of the trial judge, these same courts have a duty to determine if the fact finder was

justified in his conclusions. See, e.g., *Parker v. Rhodes*, 260 So.2d 706, 717 (La.App. 2 Cir. 1972). An appellate court is not required, because of the foregoing principles of appellate review, to affirm the trier of fact's refusal to accept as credible uncontradicted testimony or greatly preponderant objectively-corroborated testimony where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146, 1150 (La.1979).

Here, we consider not only the medical evidence that clearly supports Dr. Cox's unconditional release of Mitchell to work on July 16, 2007, but we also consider the WCJ's interpretation of the facts. The WCJ noted that Mitchell failed to return to Dr. Cox's office until October 24, 2007, despite Dr. Cox's recommendation that Mitchell return to Dr. Cox for reevaluation on or about August 8, 2007. The WCJ also noted that Mitchell looked for, and found, other employment during this time period.

Nothing in the record contradicts Dr. Cox's orders that Mitchell be released to "full duty," and nothing in the record shows that Mitchell could not have scheduled an appointment with Dr. Cox prior to October 24, 2007, if the need to do so had arisen. Applying the standard set for us in *Arceneaux* and further articulated in *Mart*, we find that the WCJ reasonably assessed the body of facts, and no manifest error occurred. Thus, we affirm the judgment that Mitchell is not entitled to the receipt of indemnity benefits from July 16, 2007 through October 23, 2007.

## Pharmaceutical Expenses

Mitchell contends that the WCJ erred in failing to require Artcrete to pay $182.06 in pharmaceutical expenses Mitchell incurred as a result of his injury. Mitchell submitted the pharmaceutical receipts to Artcrete for payment. Artcrete stipulated at trial that it had not yet paid the pharmaceutical expenses and that it was

required to pay them. Thus, at trial, Mitchell did not present evidence relating to the pharmaceutical expenses.

In his ruling, however, the WCJ found that Artcrete properly reimbursed Mitchell for the pharmaceutical expenses, and the WCJ did not assess penalties and attorney fees for that claim. On appeal, Mitchell argues that at trial Artcrete judicially confessed to owing the pharmaceutical expenses and that the WCJ was erroneous in ignoring that confession.

We agree. Louisiana Civil Code Article 1853 defines a judicial confession as "a declaration made by a party in a judicial proceeding." Louisiana Civil Code Article 1853 further provides that a judicial confession "constitutes full proof against the party who made it" and that it "is indivisible and it may be revoked only on the ground of error of fact." Once a judicial confession is made by a party, it "has the effect of waiving evidence as to the subject of the admission-of withdrawing the subject matter of the confession from issue." *Cichirillo v. Avondale Indus., Inc.*, 04-2894, p. 6 (La. 11/29/05), 917 So.2d 424, 429 (citing *Cheatham v. City of New Orleans*, 378 So.2d 369 (La.1979); *Sutton's Steel & Supply, Inc. v. Bellsouth Mobility, Inc.*, 00-511 (La.App. 3 Cir. 12/13/00), 776 So.2d 589, *writ denied*, 01-152 (La. 3/16/01), 787 So.2d 316). A judicial confession by a party, however, does not preclude that party from denying the correctness of the admission, unless the party claiming the benefit from the admission has relied on the admission to his prejudice. *Crawford v. Deshotels*, 359 So.2d 118 (La.1978).

As this court explained in *Leday v. Safeway Ins. Co. of La.*, 04-610, pp. 5-6 (La.App. 3 Cir. 11/17/04), 888 So.2d 1084, 1088:

> A judicial confession under La.Civ.Code art. 1853 constitutes incontrovertible evidence of a particular issue and serves to waive the necessity of any further proof on that issue. *Ramelow v. Bd. of Trustees of the [Univ.] of*

7

*Louisiana System*, 03-1131 (La.App. 3 Cir. 3/31/04), 870 So.2d 415, *writ denied*, 04-1042 (La. 6/18/04), 888 So.2d 184; *C.T. Traina, Inc. v. Sunshine Plaza, Inc.*, 03-1003 (La. 12/3/03), 861 So.2d 156. In order for a party's statement to constitute a judicial confession, it must be an express acknowledgment of an adverse fact. *Jones v. Gillen*, 564 So.2d 1274 (La.App. 5 Cir. 1990); *Sanders v. Earnest*, 34,656 (La.App. 2 Cir. 7/24/01), 793 So.2d 393; *State v. Lamb*, 31,919 (La.App. 2 Cir. 5/7/99), 732 So.2d 1270. Additionally, "the adverse party must have believed the fact was no longer at issue or must have relied on it, to his detriment." *Lamb*, 732 So.2d at 1272; *Alexis v. [Metro.] Life [Ins.] Co.*, 604 So.2d 581 (La.1992); *Jefferson Parish v. [Fid.] & Deposit Co.*, 95-951 (La.App. 5 Cir. 4/30/96), 673 So.2d 1238; *Jones*, 564 So.2d 1274.

Here, counsel for Artcrete plainly stated at trial that Artcrete had not yet paid the pharmaceutical expenses, and, thus, was required to pay them. Given the stipulation provided by Artcrete, Mitchell's counsel did not address the issue of pharmaceutical expenses and did not offer evidence regarding these expenses. Mitchell's counsel clearly relied on the stipulation made by Artcrete's counsel. Artcrete's claims that the stipulation was based on an error of fact do not subvert Mitchell's reliance on the stipulation.

Since Mitchell relied on Artcrete's judicial confession and consequently did not present evidence of the pharmaceutical expenses at trial, we consider the evidence presented in Mitchell's motion for a new trial. There, Mitchell refutes Artcrete's testimony that it paid the pharmaceutical expenses. Specifically, Mitchell claims that he never received reimbursement for such expenses. Indeed, no evidence in the record demonstrates that Mitchell received the payments Artcrete claims to have made. No evidence exists that Artcrete ever mailed the payments or that Mitchell ever cashed checks supposedly sent by Artcrete.

Thus, having considered Mitchell's claims, we find that the WCJ erred in refusing to treat Artcrete's stipulation regarding the pharmaceutical expenses as a

judicial confession. We reverse the WCJ's decision on this issue and find that Artcrete owes Mitchell $182.06 in pharmaceutical expenses. We also assess a penalty of $8,000.00 ($2,000.00 for each of the four expenses submitted but not paid) to Artcrete for failing to timely pay these expenses.

**Payment of Indemnity Benefits for May 18, 2007 through May 25, 2007**

Mitchell contends that Artcrete's stipulation at trial that it owed the benefits to Mitchell requires that Artcrete pay Mitchell the $213.50 in indemnity benefits for that week and that Artcrete should be penalized for not timely paying the benefits. Artcrete claims that since it overpaid benefits to Mitchell prior to the week of May 18, 2007 through May 25, 2007, it is not required to pay him an additional sum for that week.

The WCJ agreed with Artcrete and concluded that Artcrete's overpayments were enough to compensate Mitchell for the week of May 18, 2007 through May 25, 2007. We disagree with the WCJ's conclusion. Louisiana Revised Statutes 23:1206 provides as follows: "Any voluntary payment or unearned wages paid by the employer or insurer either in money or otherwise, to the employee or dependent, and accepted by the employee, [which] were not due and payable when made, may be deducted from the payments to be made as compensation."

This statute entitles an employer to a credit for previous overpayments from *future* compensation, which may be due. *Monceaux v. R&R Const., Inc.,* 05-533 (La. App. 3 Cir. 12/30/05), 919 So.2d 795 (emphasis added) (citations omitted).

Here, we do not dispute Artcrete's contention that it is entitled to credit for its overpayments to Mitchell. The credit, however, must be applied to future compensation owed to Mitchell, not, as Artcrete now argues, to compensation that was currently due. Artcrete's counsel even acknowledged this fact at trial by stating,

9

> While I realize that the indemnity that was paid following that week which commenced on 5/26/07, he was paid significantly more than he was owed at that time. The defendants did not necessarily take that to be interpreted as a credit on what was owed the prior week, but as I did outline in my pretrial statement, since claimant is and does continue to receive ongoing indemnity benefits, the defendant reserves its right to take a partial credit or a whole credit, but to reduce Mr. Mitchell's benefits in a reasonable fashion to recapture the overpayment at some point in the future. But to pay the first week, you know, we will stipulate that we will pay that in the amount of Two Hundred and Thirteen Dollars and Fifty Cents ($213.50).

We find that the WCJ erred by not awarding Mitchell indemnity benefits for the week of May 18, 2007 through May 25, 2007. Thus, we find that Artcrete must compensate Mitchell $213.50 for that week, and we assess a penalty of $2,000 to Artcrete for its failure to timely pay such amount.

### Delay in the Resumption of Benefits

Mitchell argues that the WCJ erred in failing to award penalties and attorney fees for Artcrete's delay in resumption of benefits following Mitchell's second work restriction which began on October 24, 2007. On October 24, 2007, Mitchell saw Dr. Cox and complained of disabling pain in his injured foot. Dr. Cox restricted Mitchell from all work. Following Dr. Cox's recommendation, Mitchell's counsel sent several pieces of correspondence to Artcrete's counsel demanding resumption of indemnity benefits. Artcrete, however, did not resume paying Mitchell indemnity benefits until December 20, 2007.

As we previously discussed, it is well-settled that La.R.S. 23:1206 entitles an employer to a credit for previous overpayments from future compensation which may be due. *Monceaux*, 919 So.2d 795. Further, this statute applies even if the overpayment is due to the employer's error in calculating benefits. *Ferrand v.*

10

*D.H.L. Co.*, 614 So.2d 350 (La.App. 4 Cir. 1993). We have also held that discontinuation of benefits until the overpayment is recouped is permissible and proper under this same statute. *See Breaux v. Petro Drive, Inc.*, 534 So.2d 48 (La.App. 3 Cir. 1988).

It is undisputed that Mitchell is entitled to weekly benefits of $213.50. For three weeks following Mitchell's April 28, 2007 injury, Artcrete continued to pay Mitchell his full wages, $320 per week. After overlooking the week of May 18, 2007 through May 25, 2007, Artcrete paid Mitchell indemnity benefits from May 26, 2007 through August 3, 2007 at the incorrect rate of $790 every two weeks for a total payment of $4,062 for that period of time. Thus, Artcrete paid a total of $5,022 to Mitchell from April 29, 2007 through August 3, 2007.

Mitchell was entitled to benefits from April 28, 2007, the date after the injury, through July 16, 2007, the date Dr. Cox released him to full duty. The total amount of benefits owed to Mitchell for that time period was $2,438.17. Artcrete, therefore, overpaid Mitchell by $2,583.83 and was entitled to a credit through mid-January 2008.

Because Artcrete accumulated a credit of indemnity payments, it was permissible and reasonable for the company to suspend payments until the overpayment was satisfied. Thus, we find no error in the WCJ's refusal to award penalties and attorney fees for Artcrete's suspension of indemnity payments during that time period.

**Attorney Fees**

Mitchell contends that the WCJ erred in awarding only $2,500 in attorney fees and requests that we assess additional attorney fees for services rendered at the trial level and in association with this appeal. According to *Naquin v.*

11

*Uniroyal, Inc.*, 405 So.2d 525 (La.1981), factors used in determining attorney fees in workers' compensation cases are (I) the degree of skill and ability exercised, (ii) the amount of the claim, and (iii) the amount of time devoted to the case. Considering the efforts of Mitchell's attorney, we find error in the WCJ's $2,500 award for attorney fees. It is clear from the record that Mitchell's attorney spent a considerable amount of time pursuing his client's case and vigorously enforcing Mitchell's rights at the trial level. Moreover, counsel's efforts on appeal resulted in the imposition of additional penalties against Artcrete. Finally, we recognize that the workers' compensation act is social legislation. To effectuate the salutary purposes behind the workers' compensation framework and to encourage attorneys to represent injured workers in workers' compensation cases, attorney fees should be liberally granted.

In *Jones v. Universal Fabricators*, 99-1370 pp. 10-11 (La.App. 3 Cir. 2/9/00), 758 So.2d 856, 862-63, *writ denied*, 00-0742 (La. 5/12/00), 762 So.2d 13, this court noted:

> We emphasize that adequate attorney's fees in workers' compensation cases is the basis for an injured employee obtaining effective counsel. La.R.S. 23:1221, which authorizes attorney's fees, encourages the retention of effective counsel by an employee who is injured, unemployed and unable to pay for capable representation.
>
> It is evident that an employee in workers' compensation cases by definition is placed in a disadvantageous position. The employee is injured, unemployed and often totally lacking in financial resources. In contrast, the employer has the financial means to obtain attorneys to prepare and argue its case. The primary purpose of workers' compensation is to protect injured employees from impoverishment. If an employee is arbitrarily deprived of benefits, the attorney who litigates on his behalf and is successful at showing arbitrary and capricious conduct on the part of the employer, has aided not only his client but also the administration of the workers' compensation system. This work is very important as it helps discourage others who might seek to further their own economic fortune at the

12

expense of persons injured in their employ. Considering these goals of workers' compensation, we find that an increase in attorney's fees is warranted.

For the efforts by Mitchell's attorney, we increase the award to $5,000 for the work done at the trial level and an additional $3,000 for the work done on appeal.

IV.

**CONCLUSION**

Based upon the foregoing, we reverse the portion of the judgment of the OWC denying payment of Mitchell's pharmaceutical expenses in the amount of $182.06, and we assess a penalty of $8,000 against Artcrete for the non-payment of those expenses. We also reverse the portion of the judgment denying payment of indemnity benefits for the week of May 18, 2007 through May 25, 2007, and we order Artcrete to pay $213.50 plus legal interest to Mitchell for that week. We also assess a penalty of $2,000 against Artcrete for failure to timely pay such amount. Because the WCJ previously assessed a penalty of $2,000 against Artcrete for failing to timely pay Mitchell's physical therapy expenses and because La.R.S. 23:1201 limits penalties against employers to $8,000, we hold that Artcrete must pay a maximum of $8,000 in penalties to Mitchell. Finally, we increase the award of attorney fees to award $5,000 to Mitchell's counsel for the work done at the trial level and an additional $3,000 for the work done on appeal.

All costs are assessed to Artcrete, Inc.

**AFFIRMED IN PART, AMENDED IN PART, AND REVERSED IN PART.**

13