NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-657

GREGORY MOUTON

VERSUS

ENCOMPASS INSURANCE CO., ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 113391
HONORABLE JAMES RAY MCCLELLAND, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and Shannon J.
Gremillion, Judges.

AFFIRMED.

James L. Donovan, Jr.
Donovan & Lawler, APLC
4640 Rye St.
Metairie, LA 70006-0000
(504) 454-6808
Counsel for Defendant/Appellant:
Encompass Insurance Company
Patsy Dauterive

**Robert Lynn Manard  III**
**Attorney at Law**
**1100 Poydras St., Suite 2610**
**New Orleans, LA 70163**
**(504) 585-7777**
**Counsel for Plaintiff/Appellee:**
**Gregory Mouton**

**PICKETT, Judge.**

The plaintiff and the defendants in this personal injury action appeal certain damage awards the jury made in favor of the plaintiff. Each assigns error with specific damage awards and with actions taken or rulings made by the trial court during the trial or in conjunction with post-trial motions. We affirm.

**FACTS**

Gregory Mouton was seriously injured while driving his motorcycle on July 17, 2008, when he was struck by a vehicle driven by Patsy Dauterive in New Iberia. The accident occurred when Ms. Dauterive turned left in front of his motorcycle, causing him to be thrown into the air. He landed on his back on the roadway, which caused him to sustain a severe fracture to his right pelvis and hip cup. Mr. Mouton was thirty-two years of age.

Four days later, surgery to repair the fractures with hardware and screws was performed by Dr. Kevin Riche at Our Lady of the Lake Regional Medical Center in Baton Rouge. The surgery required that a nerve which gives sensation to the outside of the leg be severed, resulting in permanent loss of feeling from that nerve in Mr. Mouton's right leg. Mr. Mouton was hospitalized for a week after the surgery, then released to no weight bearing for three months during which time he progressed to full weight bearing. Dr. Riche prescribed physical therapy and treatment during that time. Dr. Riche does not assign permanent disability ratings, and he did not order a functional capacity examination be performed on Mr. Mouton. He released Mr. Mouton, instructing him he could do whatever he felt capable of doing.

In April 2010, Mr. Mouton returned to Dr. Riche. Dr. Riche had not prescribed him any medications for a year. On examination, Dr. Riche found no appreciable difference between Mr. Mouton's right hip and his uninjured left hip;

there was almost equal strength in both hips. Mr. Mouton did complain, however, of popping and tenderness in his right leg from his right hip to his knee. Even so, Dr. Riche remained of the opinion that Mr. Mouton could return to any activity that he felt capable of performing without restriction.

Approximately one year and five months before the accident, Mr. Mouton left his employment as a second mate on a ship to return to his hometown of New Iberia to complete renovations on a building his mother had purchased. He did so at his mother's request and was not compensated for his services.

Mr. Mouton had joined the Naval Reserve in 1998, then attended and graduated with a degree from the State University of New York Maritime College in May 2000. He began sailing in 2001 with Maersk Line Limited as a third mate on "roll on, roll off" railroad ships. Following a year at sea, he was promoted to second mate. Mr. Mouton sailed until February 2007, when he returned home to assist his mother. Due to lack of sailing for over a year, he lost his medical benefits.

In 2010, after being released by Dr. Riche, Mr. Mouton began working as a plumber's helper, which he continued to do at the time of trial. He earned $10 an hour and worked between thirty to forty hours a week. He continued his commission in the Naval Reserve after the accident.

Mr. Mouton sued Ms. Dauterive and her insurer, Encompass Insurance Company, to recover damages. On January 25, 2010, the parties stipulated that Ms. Dauterive was 100% at fault for the accident. As a result of the stipulation and Mr. Mouton's work history, the primary dispute at trial was the economic losses Mr. Mouton sustained as a result of the injuries he suffered in the accident. The parties contested the degree of any permanent injury Mr. Mouton sustained and the effect any such permanent injury had on his earning capacity. Mr. Mouton

testified that before his accident, he had intended to return to sea for the rest of his life and he had had been working on promotion to chief mate by completing seventy-five percent of the courses required to take the chief mate exam. Mr. Mouton explained that he needed only two more classes to take the exam and that eighteen months was a reasonable time period to complete those courses.

Mr. Mouton described the duties of a second mate as including heavy work such as climbing, standing, walking, and drills. He related that he did not believe he could return to sea. He fears it would not be safe for others, and he would be putting lives at risk. Mr. Mouton testified that he continues to have leg pain and that activity increases his pain, explaining that working for a prolonged time or walking a mile or more causes throbbing pain in his hip. He further testified he cannot lift very heavy things, but he can lift and squat but not for long periods of time. He explained that he tries to do as Dr. Riche instructed—whatever he is capable of doing—but when he does, he suffers. According to Mr. Mouton, when he sits, he has stabbing pain in his leg, and that he has come to realize that the pain, weakness, and numbness in his leg will be permanent. This and his inability to return to sailing, hunting, and fishing, activities he enjoyed before the accident, depress him. Lastly, he testified that his leg pain had worsened in the weeks before trial.

Mr. Mouton and the defendants presented opposing expert testimony regarding the likelihood of him returning to work at sea, his employment outlook, his likely earning capacity in such employment, and the resulting economic impact the accident had on him. After deliberating, the jury returned a verdict awarding Mr. Mouton damages for past and future medical bills, past lost wages, future loss of earnings/earning capacity, loss of fringe benefits, past, present and future mental and physical pain and suffering, permanent physical impairment and disability, and

3

loss of enjoyment of life. The jury did not award him damages for loss of household services as requested. The manner in which two of the damage awards, past lost wages and loss of fringe benefits, were written on the Verdict Form presented an issue when the parties attempted to reduce the jury's verdict to a written judgment. The trial court resolved the issue in Mr. Mouton's favor, determining the jury intended the awards to be $105,000.00 for past lost wages and $450,000.00 for loss of fringe benefits.

The defendants filed a motion for new trial, remittitur, and/or judgment notwithstanding the verdict. The trial court held that a new trial was not warranted, the evidence did not support the jury's award for future medical bills, and the remaining damages awards in the judgment were supported by the evidence. The defendants appealed, assigning four errors. Mr. Mouton answered the appeal, assigning six errors and seeking sanctions for frivolous appeal.

**ASSIGNMENTS OF ERROR**

The defendants assign four errors with the trial court proceeding:

1. The trial court abused its discretion in failing to grant their post-trial motion for new trial, judgment notwithstanding the verdict or remittitur and set the awards for past loss wages and loss of fringe benefits in accordance with the jury's written verdict.

2. The trial court abused its discretion in failing to grant their post-trial motion for new trial, judgment notwithstanding the verdict or remittitur, as the plaintiff's attorney persistently made calculated inflammatory remarks designed to appeal to the passions and prejudices of the jury.

3. The trial court abused its discretion when it failed to grant their post-trial motion for new trial, judgment notwithstanding the verdict or remittitur, as it failed to allow introduction of the surveillance video of plaintiff and plaintiff was allowed to present evidence of future employment that had not been turned over to defendant during discovery before trial.

4. The jury erred and the trial court abused its discretion when it failed to grant their post-trial motion for new trial, judgment

4

notwithstanding the verdict or remittitur, as to the jury's award for future lost earnings/earning capacity.

Mr. Mouton assigns six errors with the trial court proceeding:

1. The trial court abused its discretion by granting the defendants' motion for judgment notwithstanding the verdict and eliminating the future medicals award of $15,000.00.

2. The jury abused its discretion when it failed to award the full amount of past medical bills stipulated to by both parties.

3. The jury abused its discretion in failing to award an adequate amount of physical and mental pain and suffering and loss of enjoyment of life.

4. The jury abused its discretion in failing to make an adequate award for past and future earning capacity and fringe benefits.

5. The trial court erred in failing to give him his requested earning capacity charges.

6. The trial court erred in failing to allow him to introduce an email on rebuttal.

## TRIAL COURT ERRORS

*Past Lost Wages & Loss of Fringe Benefits*

The defendants argue the trial court erred in not granting their motion for new trial, judgment notwithstanding the verdict, or remittitur and in not setting the awards for past loss wages and loss of fringe benefits in accordance with the jury's written verdict. The jury completed pertinent parts of the verdict form in the following manner:

| | |
|---|---|
| Past Medical Bills: | $ 72,000.00 |
| Future Medical Bills: | $ 15,000.00 |
| . . . . | |
| **Past Lost Wages** | **$ 105,00.00** |
| Future Loss of Earnings/ Earnings Capacity: | $ 1,680,000.00 |
| **Loss of Fringe Benefits:** | **$ 450,00.00** |

After the hearing on the defendants' motion, the trial court acknowledged these awards presented a problem but observed that "comma's line up with the other commas. It just happens on those two instances there is, there is a lack of a third zero in front of the decimal. But the commas line up perfectly and the columns line up perfectly." The trial court also observed that the verdict was returned late at night after the conclusion of a four-day trial and that ten of the twelve jurors answered, "Yes." when asked, "[I]s this your verdict?" by the minute clerk after she read the verdict form aloud.

There are no cases precisely on point; however, we find no error with the trial court's determination concerning either of these awards. First and foremost, the jury awarded less for past lost wages than the defendants' own expert calculated. Dan Cliffe testified as an expert in the field of economic analysis in determination of potential for economic loss. He calculated Mr. Mouton's past lost wages to be $105,615.00, as opposed to Mr. Mouton's expert, who calculated his past lost wages to be $345,601.00.

The determination with regard to loss of fringe benefits is not as easy. The forty-five of $450,00.00 *almost* lines up exactly with the sixty-eight of the $1,680,000.00 award for future loss of earnings/earnings capacity. Mr. Cliffe opined that Mr. Mouton would not suffer any loss of fringe benefits, explaining he believed any shore-side maritime employment Mr. Mouton obtained would provide significant fringe benefits; otherwise, the employment would not be competitive with other employers. Dr. G. Randolph Rice, on the other hand, calculated Mr. Mouton's loss of fringe benefits to be $910,954.00.

The defendants argue the trial court improperly conducted its polling of the jury; therefore, it does not support the trial court's conclusion that the jury intended the $450,00.00 to be $450,000.00. There is no codal or statutory authority for civil

6

litigants to poll jurors as La.Code Crim.P. art. 812 provides for criminal litigants. *Owens v. Concordia Elec. Co-op, Inc.*, 95-1255 (La.App. 3 Cir. 6/25/97), 699 So.2d 434, *writs denied*, 97-2698, 97-2728, 97-2736 (La. 1/9/98), 705 So.2d 1113, 1120, respectively. Courts, however, have afforded civil litigants the right. *Id.*

The trial court polled the jury as described in *Owens*, having the minute clerk ask each juror, "[I]s this your verdict?" after she read the verdict aloud. Moreover, this court determined in *Owens* the trial court erred in making further inquiry into the jury's verdict after polling showed that ten of the twelve jurors agreed with the verdict. Accordingly, the trial court's polling of the jury was proper and an appropriate basis for its refusal to award $10,500.00 for past lost wages and $45,000.00 for loss of fringe benefits.

Contrary to the defendants' claim, *Acosta v. Pendleton Mem'l Methodist Hosp.*, 545 So.2d 1053 (La.App. 4 Cir.), *writs denied*, 551 So.2d 637; 638 (La.1989), does not require that each juror be asked, "Is this your verdict?" for each interrogatory on the verdict form. In *Acosta*, the jury was polled as to one specific interrogatory on the verdict form only because the plaintiff requested polling as to that specific issue.

### *Remarks/arguments by Plaintiff's Counsel*

The defendants urge that comments made by Mr. Mouton's attorney during the course of the trial, such as "this case is bigger than plaintiff, the next injured person will be treated based on your award to plaintiff" and "Encompass is doing to plaintiff what BP is going to do to you, just watch!," prejudiced the jury in Mr. Mouton's favor.

Although Mr. Mouton's attorney did make the noted comments, review of the jury's awards shows the comments did not prejudice the jury in favor of Mr. Mouton. Six of the nine damage awards were amounts acknowledged as due

7

by the defendants or suggested by their experts *or less*. Mr. Mouton presented evidence that he had past medical expenses of $72,663.15, but the jury only awarded him $72,000.00 in past medical expenses. Also, as noted above, the jury awarded Mr. Mouton less for past lost wages than the defendants' expert calculated. Importantly, the jury awarded the exact amounts suggested by counsel for the defendants for physical pain and suffering, past, present, and future; mental pain and suffering, past, present, and future; permanent physical impairment and disability; and loss of enjoyment of life.

The jury's awards for future loss of earnings/earning capacity and loss of fringe benefits were greater than the amounts calculated by the defendants' experts but less than one-half the amounts calculated by Mr. Mouton's experts. Mr. Mouton argued the evidence established that his injuries resulted in him suffering a future loss of earnings/earning capacity in the amount of $5,033,410 and loss of fringe benefits in the amount of $910,054.00. The defendants argued his future loss of earnings/earning capacity was $231,150.00, but he had no fringe benefits loss. The jury awarded $1,680,000.00 and $450,000.00, respectively.

Improper remarks by counsel constitute reversible error only when the court is "thoroughly convinced the remark[s] influenced the jury and contributed to its verdict." *State v. Eaton*, 524 So.2d 1194, 1208 (La.1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 818 (1989). The jury's verdict was supported by expert opinion, and when considered in light of those opinions, the damage awards show the complained-of remarks had little, if any, influence on the jury's verdict. Accordingly, the trial court did not err in refusing the defendants' request for a new trial, judgment notwithstanding the verdict, or remittitur on the basis of these damages awards.

*Evidentiary Rulings*

The defendants and Mr. Mouton each complain the trial court erred in refusing to admit evidence they sought to introduce at trial.

Two weeks before trial, an investigator for the defendants filmed Mr. Mouton assisting his employer in installing a ramp to provide handicap access to mobile home/trailer. The defendants sought to play the video for the jury during trial. After a hearing the morning trial began, the trial court rejected the request because the video was not listed on the defendants' pre-trial exhibit list. The defendants argue the trial court erred in rejecting their request to play the video for the jury. They contend Mr. Mouton's damage awards would have been much lower if they had been allowed to show the video to the jury because it shows Mr. Mouton is capable of doing heavy labor which he claimed he could no longer perform due to his injury. To compensate for not being able to show the video, defense counsel reviewed with Mr. Mouton his deposition where he testified he was merely a gopher for his employer and simply handed him tools, then engaged Mr. Mouton in an in-depth cross-examination regarding each action the video showed him making.

The defendants objected the morning trial started when the trial court ruled the video was inadmissible, but they did not proffer the video during trial. Failure to proffer excluded evidence precludes the offering party from complaining of the excluded testimony because the appellate court cannot analyze the evidence and its admissibility. *Wilzcewski v. Brookshire Grocery Co.*, 10-1148 (La.App. 3 Cir. 3/16/11), 59 So.3d 530; *Whitehead v. Kan. City S. Ry. Co.*, 99-896 (La.App. 3 Cir. 12/22/99), 758 So.2d 211, *writ denied*, 00-209 (La. 4/7/00), 759 So.2d 767. Therefore, we need not address this issue.

9

Mr. Mouton complains the trial court erred in refusing to allow him to admit an email from his former employer offering him employment one month *after* the accident. Although Mr. Mouton offered the email in rebuttal to the defendants' arguments that he did not prove he was entitled to an award for past lost wages, the trial court ruled it was inadmissible. The trial court reasoned that Mr. Mouton's failure to include the email on his pretrial exhibit list when it was available to him *and* he knew "whether he could go back to work as a seaman" would be an issue at trial warranted exclusion of the email.

A trial court has vast discretion in ruling on the admissibility of evidence, and its decision to admit or exclude evidence will not be reversed on appeal unless it is clearly shown that it has abused that discretion. *Gutierrez v. Baldridge*, 10-1528 (La.App. 3 Cir. 5/11/11), 65 So.3d 251. For the reasons explained by the trial court, we find it did not abuse its discretion in denying Mr. Mouton's request to admit the email into evidence.

The defendants urge the trial court should have prohibited Mr. Mouton's testimony that he received the job offer and the email. We do not agree. First, the defendants do not argue they had no knowledge of the job offer prior to hearing him testify at trial. Second, it was the jury's duty to assess Mr. Mouton's credibility. Third, the jury's damage awards show the jury did not accept all of Mr. Mouton's or his expert witnesses' testimony as completely credible.

### Jury Charges

Mr. Mouton urges the trial court's charge on earning capacity did not adequately summarize the law and the trial court erred in refusing to include two jury charges on earning capacity he submitted. The charges the trial court refused to include read: "Impairment of earning capacity may be measured by plaintiff's highest earnings and not restricted by average wage earned by plaintiff" and "Loss

of earning capacity is not the same as lost wages." A third charge on earning capacity which the trial court did include in its charges read:

> Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory of that is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.

If the trial court's charges "adequately provide the correct principles of law as applied to the issues framed in the pleadings and the evidence" and "adequately guided the jury in its deliberation," they were sufficient. *Adams v. Rhodia, Inc.*, 07-2110, p. 7 (La. 5/21/08), 983 So.2d 798, 804. The issue is whether the instructions were misleading to the extent that they prevented the jurors from dispensing justice. *Id.; Wooley v. Lucksinger*, 09-571, 09-584, 09-585, 09-586 (La. 4/1/11), 61 So.3d 507.

We have reviewed the trial court's jury charges and find that while they did not state specifically what Mr. Mouton requested, they adequately stated the law on earning capacity and set forth the factors the jury could consider in determining an award for loss of earning capacity, as the supreme court initially outlined in *Folse v. Fakouri*, 371 So.2d 1120 (La.1979). Accordingly, we find no error with the trial court's refusal to include the requested instructions in its jury charges.

## DAMAGES

### *Medical Expenses*

Mr. Mouton complains the jury erred in not awarding the full amount of past medical expenses he incurred, asserting the defendants' stipulated his past medical expenses totaled $73,267.60 when they stated in their pre-trial memorandum that he "incurred medical bills" in that amount. Mr. Mouton presented evidence that his past medical expenses actually totaled $72,663.15.

11

"A stipulation is a judicial confession and amounts to full proof" against the person making it. *Aycock v. City of Shreveport*, 535 So.2d 1006,1013 (La.App. 2 Cir. 1988), *writ denied*, 536 So.2d 1223 (La.1989); La.Civ. Code art. 1853. A statement is a judicial confession and incontrovertible evidence of a particular issue if it is "an express acknowledgement of an adverse fact." *Mitchell v. Artcrete, Inc.*, 09-492, p. 8, (La.App. 3 Cir. 12/9/09), 24 So.3d 1000, 1005 (quoting *Leday v. Safeway Ins. Co. of La.*, 04-610, p. 6 (La.App. 3 Cir. 11/17/04), 888 So.2d 1084, 1088) (citations omitted). To constitute "an express acknowledgement of an adverse fact," a statement must have caused the adverse party to believe "the fact was no longer at issue." *Id.*

Mr. Mouton did not believe the amount of his past medical expenses was "no longer at issue," as he presented evidence of his past medical expenses at trial and he did not ask the trial court to inform the jury that the defendants stipulated to the amount of his past medical expenses. Additionally, as noted by the defendants, if they had stipulated to his past medical expenses, that item of damages would not have been included on the Verdict Form. Despite there being no stipulation for the amount of past medical expenses, we find Mr. Mouton proved he is entitled to have the jury's award of $72,000.00 increased to $72,663.15.

Medical expenses are special damages which must be proved by a preponderance of the evidence. *Cormier v. Colston,* 05–507 (La.App. 3 Cir. 12/30/05), 918 So.2d 541. To satisfy his burden with regard to his claims for medical expenses, Mr. Mouton had to prove, more probably than not, that the expenses were incurred or will be incurred for medical treatment necessitated by injuries caused by the accident. *Ardoin v. Bourgeois*, 04-1663 (La.App. 3 Cir.

12

11/2/05), 916 So.2d 329. This required him to present medical testimony regarding the need of the treatment and its actual or probable cost. *Id.*

The trial court also did not err in setting aside the jury's award of future medical expenses because the only evidence Mr. Mouton presented on this item of damages was that he would have arthritis as a result of his injury. His doctors did not testify that he would more probably than not require medical treatment for arthritis in the future or what the treatment would cost. Mr. Mouton's counsel simply argued to the jury that it should "assume" $15,000.00 would be sufficient to cover future medical expenses required to treat his arthritis.

### General Damages

The defendants argue the trial court erred in denying its motion for new trial, judgment notwithstanding the verdict, or for remitter to reduce the jury's award for future lost earnings and earning capacity, and Mr. Mouton argues the jury erred in failing to award him damages for physical and mental pain and suffering and loss of enjoyment of life, past and future earning capacity, and fringe benefits.

The jury heard testimony of Mr. Mouton and his mother, as well as the testimony of expert witnesses, including his treating physician, on all the elements of damages itemized on the Verdict Form, except future medical expenses. The jury also heard Mr. Mouton acknowledge he had not set a return date to sail prior to the accident; he had not taken a course towards his chief mate's prerequisite courses during his hiatus from work; he had lost his health insurance for failing to return to sea in over a year from February 2007; and he had never been at sea for ten months or 300 days any given year since he began sailing. The jury also heard expert testimony regarding different potential employment Mr. Mouton might be suited for in light of his injury, education, and work experience, the potential income and fringe benefits such employment could provide him, and the impact his

13

injury had on his earning capacity. The experts' credentials and opinions were thoroughly presented and examined by counsel for Mr. Mouton and the defendants which allowed the jury to weigh the credibility of the witnesses. It also allowed the jury to evaluate Mr. Mouton's testimony that before the accident he intended to return to sea and the opposing experts' opinions as to the likelihood of him doing so or obtaining other sea-related employment in light of each other.

The jury has much discretion in assessing damages; its assessment of damages is a finding of fact subject to the manifest error standard of review. *Ryan v. Zurich Am. Ins. Co.*, 07-2312 (La. 7/1/08), 988 So.2d 214. Damage awards cannot be set aside unless they are shown to be clearly wrong. *Id.* The jury's damage awards are not clearly wrong as they are well supported by the record.

## FRIVOLOUS APPEAL

In his answer, Mr. Mouton asserts the defendants' appeal is frivolous and warrants the imposition of sanctions, as provided in La.Code Civ.P. art. 2164. Damages, including attorney fees, may be awarded when an appeal does not present any serious legal question, is taken only for the purpose of delay, or when it is clear appellant's counsel does not believe his position has merit. *Hannie v. Guidry*, 10-216 (La.App. 3 Cir. 10/6/10), 48 So.3d 396.

Although we have found no merit in any of the defendants' assignments of error, we have no doubt defense counsel seriously believes in the positions he advocates, and this appeal is not frivolous.

## DISPOSITION

The judgment of the trial court granting Encompass Insurance Company and Patsy Dauterive's motion for new trial, judgment notwithstanding the verdict, and/or remitter with respect to the jury's award of future medical expenses but denying it in all other respects and awarding Gregory Mouton $2,617,000.00 plus

costs and interest from the date of judicial demand is affirmed. Costs of this appeal are assessed to Encompass Insurance Company and Patsy Dauterive.

**AFFIRMED.**